UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMIE QUINN, an individual

    Plaintiff,

v.

PIPE & PILING SUPPLIES (U.S.A.) LTD.,
a foreign profit corporation, and
RON GRIFFITH, an individual,

    Defendants.
_____/

No. 2:09-cv-161

HON. ROBERT HOLMES BELL

**O P I N I O N**

    This is an employment case involving allegations of sexual harassment under Title VII, 42 U.S.C. § 2000e *et seq* ("Title VII"), Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), and common law claims of assault and battery. This matter is before the Court on Defendants' motion for partial summary judgment, which involves only Plaintiff's employment related claims under Title VII and ELCRA.

    Defendants seek summary judgment on Plaintiff's Title VII and ELCRA claims against Defendant Pipe and Pilings Supply ("P&P"), and on Plaintiff's Title VII claim against Defendant Griffith. Defendants also seek a judicial determination of the following issues: (1) Plaintiff's temporary removal from work with pay was not an "adverse

1

employment action" supporting a Title VII or ELCRA claim; (2) Plaintiff was not constructively discharged; (3) Plaintiff's refusal of Defendants' November 3, 2008, offer to resume her regular employment tolls Plaintiff's claim for back pay; (4) punitive damages under Title VII are not available.

**I. Background**

Plaintiff Quinn was hired in November of 2005 as a bookkeeper for a small office of Defendant P&P in Kincheloe, Michigan. Her supervisor was Defendant Ron Griffith. For the duration of her employment, Ms. Quinn and Mr. Griffith worked alone in the Kincheloe office.

In her complaint, Ms. Quinn alleges that Mr. Griffith began professing his love for her and making unwelcome sexual comments and advances in late 2007. Mr. Griffith's alleged misconduct includes inappropriate sexual propositions and a variety of unwanted touching. (Dkt. No. 1 at ¶¶ 10-12.) In June of 2008, Ms. Quinn reported the alleged sexual harassment to Jack Dym, President of P&P.

Following Ms. Quinn's report, Mr. Dym conducted an investigation of Quinn's allegations which lasted several months. During the investigation, Plaintiff Quinn did not work during business hours, but did work some hours during nights, weekends, and certain days when Defendant Griffith was away from the P&P office. Plaintiff continued to receive full pay and benefits.

P&P ultimately concluded that Quinn's allegations could not be substantiated. P&P

2

asked Quinn to resume her normal duties and hours. P&P also noted that a third employee had been hired at the Kincheloe office, such that Mr. Griffith and Ms. Quinn would no longer be the sole occupants of the office. Ms. Quinn opted not to return to work and has subsequently filed this lawsuit.

Defendants deny any instances of sexual harassment or improper conduct. There is also substantial disagreement between Plaintiff and the Defendants regarding the thoroughness of P&P's investigation, the voluntary nature of Ms. Quinn's odd-hour work during the investigation, and the adequacy of P&Ps offer to reinstate Ms. Quinn to her regular duties.

## II. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence

and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

**III. Analysis**

**A. Title VII Claim against Defendant Griffith**

In *Walthen v. General Electric Company*, the Sixth Circuit held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." 115 F.3d 400 (6th Cir. 1997). The parties now agree that Mr. Griffith, an individual, is not subject to a Title VII claim. Therefore, Count I will be dismissed as to Defendant Griffith.

**B. Title VII Claim against Defendant P&P**

Defendants argue that Plaintiff's Title VII claim against P&P "should be dismissed because [P&P] did everything possible to protect the Plaintiff's civil rights upon first learning of her allegations of sex discrimination/hostile work environment." (Dkt. No. 47 at 20.) Plaintiff disputes Defendants' position that P&P did "everything right." (Dkt. No. 59 at 13.) Clearly the adequacy of P&P's response to Plaintiff's allegations is a contested

4

issue. However, it is not the central issue concerning Defendant P&P's liability under Title VII. Neither party fully addresses the law governing vicarious liability under Title VII.

An employer's liability for the sexual harassment of a supervisor turns in part on whether the harassment claim is a quid pro quo or hostile work environment claim. Despite some ambiguity in the complaint, Plaintiff now unequivocally asserts that her claim alleges a hostile work environment, and *not* quid pro quo harassment. (Dkt. No. 59 at 9, 13.). *See also infra* Part E. The Court accepts Plaintiff's clarification, noting that quid pro quo claims are less favorable to defendant employers, as they confer strict liability on employers for tangible employment actions.

There is no strict liability for hostile work environment claims, but there remains a presumption of employer liability. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 777 (1998). An employer can only defeat liability by raising the affirmative defense announced by the Supreme Court in *Ellerth* and *Faragher*:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. R. Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm. . . ."

5

*Ellerth*, 524 U.S. at 745; *Faragher*, 524 U.S. at 777-78. Defendant P&P waived this affirmative defense by failing to raise it in the answer to Plaintiff's complaint. (Dkt. No. 14.) It also appears that Defendant P&P explicitly waives the defense in its supporting brief. (Dkt. No. 47 at 20.) Finally, even if P&P had not waived this defense, it could not satisfy the first prong of the waiver, which requires that employers take care to "prevent" sexually harassing behavior. By Defendants' own admission, P&P had "no [anti-harassment] policy and was unaware that it needed any such policy." (*Id.*)

Defendants seem to believe that P&P may evade vicarious liability for any hostile work environment conditions created by Defendant Griffith merely by showing that P&P took reasonable action to address Plaintiff's allegations once they were known. While that may be sufficient under ELCRA, not so under Title VII. The Sixth Circuit squarely addressed this misconception shortly after the Supreme Court's decisions in *Ellerth* and *Faragher*:

> The district court reasoned that employer liability for sexual harassment is negated if the employer responds adequately and effectively once it has notice of the supervisor's sexual harassment. This standard is at odds with the employer's affirmative defense described in Ellerth/Faragher which requires an employer to prove that it took reasonable care to prevent and correct promptly any sexually harassing behavior and that the plaintiff employee unreasonably failed to take advantage of preventative or corrective opportunities provided by the employer.

*E.E.O.C. v. SBS Transit, Inc.*, 1998 WL 903833, 172 F.2d 872, (6th Cir. 1998). Since P&P has not and can not raise the Ellerth/Faragher affirmative defense, P&P is liable as a matter of law for any actionable hostile work conditions created by employee/supervisor Griffith in

6

violation of Title VII. Whether or not Defendant Griffith created a hostile work environment is the central dispute in this case, and is clearly an issue of material fact. Thus, Defendants' motion for summary judgment on Plaintiff's Count I Title VII claim with respect to Defendant P&P will be denied.

## C. ELCRA Claim Against Defendant P&P

The Defendants also move for summary judgment on Plaintiff's ELCRA claim against Defendant P&P. Defendants offer the same reasoning; because P&P did everything possible to address Plaintiff's allegations and concerns, it can not be held vicariously liable. Unlike Title VII, this line of reasoning is appropriate with respect to ELCRA.

Under ELCRA, an employer can be held liable for hostile environment sexual harassment only if the employer has actual or constructive notice of the hostile environment and fails to take appropriate and prompt remedial action. *Downer v. Detroit*, 191 Mich. App. 232, 234 (1991). It is clear that P&P received actual notice of Plaintiff's allegations on June 6, 2008, in the form of an email to P&P President Jack Dym. At issue is whether the sum of Defendant P&P's actions after receiving actual notice of Plaintiff's allegations adequately and promptly remedied the situation. If so, P&P cannot be liable under ELCRA.

Defendants argue that they have satisfied their burden of showing a prompt and adequate remedial response by P&P. In response to Plaintiff's allegations, P&P launched an investigation and separated Plaintiff from her supervisor. Ultimately, P&P offered to return Plaintiff to her original duties with the addition of a third employee at the Kincheloe

7

office. Defendants argue that these responses were appropriate in light of P&P's determination that Plaintiff's allegations were not credible "based upon the facts and circumstances revealed through a fair investigation." (Dkt. no. 47 at 19.)

Defendants may not rely on an assumption that Plaintiff's allegations are unsustainable when characterizing the adequacy of their remedial actions. Whether or not Plaintiff's allegations are truthful is the central factual dispute in this case. The Court notes that Defendants have not moved for summary judgment for claims involving solely those factual determinations. Indeed, in a motion for summary judgment, matters must be viewed in the light most favorable to the Plaintiff.

The adequacy and promptness of the Defendants' investigation is contested. Even accepting Defendants' attack on Plaintiff's most recent affidavit, (Dkt. No. 60 at 2-3), the evidentiary record leaves open triable issues of fact. The lengthy duration of P&P's investigation and the email correspondence between Plaintiff and Jack Dym, (Dkt. No. 47, Ex. E), create a triable issue of fact as to the promptness of P&P's response. Plaintiff's repeated assertion that she was pressured into working nights and P&P's decision to retain Defendant Griffith in the Kincheloe office create a triable issue of fact as to the adequacy of P&P's response. Both parties have criticized one another for failure to separate argument from fact and for inadequate evidentiary support. The Court is sympathetic. However, it is the moving party which must carry the heavier burden when seeking summary judgment. Summary judgment on Plaintiff's ELCRA claim against Defendant P&P will be denied.

**D. Adverse Employment Action**

Defendants seek a declaration that Plaintiff did not suffer an adverse employment action within the meaning of Title VII and ELCRA. They specifically argue that P&P's decision to remove Plaintiff from her regular working conditions with full pay was not an adverse employment action.

Plaintiff responds by clarifying that she is only alleging a hostile work environment claim, which does not require an adverse employment action under either Title VII or ELCRA.

> Plaintiff has not made a quid pro quo claim against the defendants. In no way did the Plaintiff claim Defendant Griffith threatened to fire [Plaintiff] or condition employment upon sexual relations; rather, it was the inappropriate touching, professions of love, requests for sexual liaisons, and other like behavbior that created a hostile work environment.

(Dkt. No. 59 at 8). Defendants point out that Plaintiff's position is less than clear judging solely from the complaint. (Dkt. No. at 6.) However, the Court accepts Plaintiff's clarification. Plaintiff has admitted that she is bringing only a hostile work environment claim, and not a quid pro quo harassment claim under Title VII or ELCRA. From the same language, it is also clear that Plaintiff is not pursuing a retaliation claim under either statute.

In light of Plaintiff's clarification, the Court need not consider Defendants' motion on this issue. However, Plaintiff is obliged to remain within the scope of a hostile work environment claim.

### E. Constructive Discharge and Back Pay

Given that Plaintiff is solely pursuing a hostile work environment claim, the issue of constructive discharge will not have any bearing on Defendants' liability. Although constructive discharge can be an adverse employment action, Plaintiff need not show an adverse employment action to prevail on her hostile work environment claim. Also, constructive discharge is not itself a cause of action. *Jacobson v. Parda Fed. Credit Union*, 457 Mich. 318, 321 n. 9 (1998). However, the Court will still address this question because it is germane to the availability of back pay.

Constructive discharge by an employer requires (1) the creation of intolerable working conditions, and (2) intent to force resignation. *Agnew v. BASF Corp.*, 286 F.3d 307 (6th Cir. 2002); *Logan v. Denny's, Corp.*, 259 F.3d 558, 568-69 (6th Cir. 2001). While there is a genuine issue of material fact as to whether Plaintiff was subjected to intolerable working conditions by her supervisor, there is no evidence showing an intent by Defendant P&P to force Plaintiff's resignation.

Plaintiff presents arguments under the first prong of constructive discharge, but does not address employer intent. (Dkt. No. 59 at 9-10.) Under some circumstances, an offer to resume regular employment alongside an alleged harasser might raise an issue of fact regarding employer intent. However, in this case, Defendant P&P hired a third employee for the Kincheloe office in accordance with Plaintiff Quinn's proposed remedies.[1] As Defendant

---

[1]It is unclear from Plaintiff's initial remedial demand whether hiring another employee for
(continued...)

P&P apparently believed it had satisfied Plaintiff's requirements for returning to work, there is no reason to suspect that P&P intended to push Plaintiff into resigning. Even setting aside the hiring of a third employee, Plaintiff has not alleged facts or made any arguments supporting a finding of employer intent to force resignation. Therefore, the Court finds that Plaintiff was not constructively discharged by Defendant P&P, and her decision not to return to work was voluntary.

An employee who voluntarily quits her job tolls claims for back pay as a matter of law. *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 767 (6th Cir. 2008). Accordingly, Plaintiff may not receive lost wages for the period following her decision to discontinue employment with Defendant P&P. Since the parties agree that Plaintiff received full wages and benefits prior to her resignation, Plaintiff is not entitled to back pay.

## G. Punitive Damages

Punitive damages are available under Title VII if the plaintiff can "demonstrate that the [defendant] engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

---

[1](...continued)
the Kincheloe office would be sufficient to satisfy Plaintiff, or whether Plaintiff would only accept another person hired to replace Defendant Griffith. However, Defendants explicitly claim that "[P&P] was led to believe that Quinn would return to work in her identical job position after a third employee was hired to work in the same office." (Dkt. No. 47 at 16.) Plaintiff has not refuted this statement. Also, in her deposition, Plaintiff Quinn indicates that she initially considered the hiring of a third employee a sufficient remedy: "Hiring another person, it was an option." (*Id.*, Ex. B at 207.) The Court notes that hiring a third employee would be similar in effect to installing cameras, which was another of Plaintiff's proposed remedies.

42. U.S.C. § 1981a(b)(1). Defendant P&P essentially argues that Plaintiff cannot meet her burden in showing "malice" or "reckless indifference" on the part of Jack Dym and P&P during the course of its investigation. The Court agrees. While the adequacy and promptness of Defendant P&P's response to Plaintiff Quinn's allegations remains a live question, no reasonable jury could find malice or reckless indifference on the part of P&P from the point which they received notice of Plaintiff's allegations. However, both parties fail to address Defendant P&P's liability for the actions of Defendant Griffith.

A defendant employer may avoid punitive liability under Title VII by showing that it engaged in good faith efforts to comply with Title VII. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999). A good faith effort to comply with Title VII generally means the effective implementation of an anti-discrimination or anti-harassment policy. *See Id.* at *Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico*, 554 F.3d 164, 176 (1st Cir 2009); *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010); *EEOC v. Management Hospitality of Racine, Inc.*, 623 F. Supp. 2d 980, 985-86 (E.D. Wis. 2009). Good faith compliance is an affirmative defense for which the burden of proof rests with the employer. *Monteagudo*, 554 F.3d at 176.

Defendant P&P admits that it had no anti-discrimination policy whatsoever. (Dkt. No. 47 at 20.) P&P has not and cannot raise a good faith defense. The fact that Plaintiff cannot show malice or reckless indifference on the part of P&P in response to her complaint does not help Defendant P&P avoid exposure to punitive damages for the alleged actions of

Defendant Griffith. "[A]n employer's conduct need not be independently 'egregious' to satisfy § 1981a's requirements for a punitive damages award . . . ." *Kolstad*, 527 U.S. at 546.

Viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find that Defendant Griffith acted with malice or reckless indifference as to Plaintiff Quinn's federally protected Title VII rights. As discussed in Part B *supra*, a reasonable jury could also find P&P vicariously liable for the actions of Defendant Griffith. As Defendant P&P cannot raise a good faith defense to avoid punitive liability, the Defendants' motion for summary judgment on the question of punitive damages will be denied.

**IV. Conclusion**

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment on Plaintiff's Count 1 claim against Defendant Griffith; will deny Defendants' motion for summary judgment on Counts I and II against Defendant P&P. The Court also decides as a matter of law that Plaintiff was not constructively discharged by Defendant P&P and is not entitled to back pay. Finally, the Court declines to decide the question of whether Plaintiff suffered an adverse employment action, noting that Plaintiff is pursuing a hostile work environment claim. An order consistent with this opinion will be entered.

Dated: October 21, 2010                     /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE